# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROGER WILLIAMSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE PHARMA, L.P., THE PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, PURDUE PHARMACEUTICALS L.P., and P.F. LABORATORIES, INC., <br><br> Defendants. | Civil Action No. 04-CV-10154 (REK) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' ASSENTED-TO MOTION TO TRANSFER PROCEEDINGS TO THE SOUTHERN DISTRICT OF NEW YORK

Defendants Purdue Pharma L.P., The Purdue Pharma Company, The Purdue Frederick Company, Purdue Pharmaceuticals L.P., and P.F. Laboratories, Inc. (collectively "Purdue") hereby submit this Memorandum in support of their Assented-To Motion to Transfer Proceedings to the United States District Court for the Southern District of New York.

## SUMMARY OF BASES FOR TRANSFER

This antitrust litigation follows on the heels of a separate but closely related patent action in the United States District Court for the Southern District of New York that Purdue brought against Endo Pharmaceuticals ("Endo"), a generic drug manufacturer. Following an 11-day bench trial, the Hon. Sidney Stein of that Court issued a lengthy memorandum opinion holding that Endo's products infringed various Purdue patents on OxyContin® Tablets (a prescription pain medication), but that the patents were unenforceable due to inequitable conduct before the

U.S. Patent and Trademark Office ("PTO"). *Purdue Pharma, L.P. v. Endo Pharm. Inc.*, 2004 WL 26523 (S.D.N.Y. January 5, 2004) (Exhibit A hereto).

In this lawsuit, plaintiff now alleges that Purdue's patent infringement lawsuit against Endo was a "sham" and an act of monopolization in violation of the antitrust laws -- that the patent action was both objectively baseless and brought subjectively in bad faith.[1] Though the ultimate legal issues in this antitrust case are different from those decided in the prior patent case, Judge Stein's deep familiarity with the voluminous record and complex issues of patent law and science in that alleged "sham" litigation will be important to the resolution of these antitrust claims. Where one federal judge has already mastered a huge record that bears centrally on the issues now presented in this antitrust case, transfer is warranted to avoid the inefficiency of requiring multiple courts to become immersed in identical matters.

Further, in its answer to Purdue's patent infringement claims, Endo asserted antitrust counterclaims that allege, among other things, essentially the same "sham litigation" and monopolization theories asserted here.[2] Fact discovery on those antitrust counterclaims is complete and expert reports have been exchanged. The pendency of this earlier case, already in litigation for roughly two years, is yet a further reason to transfer this matter to Judge Stein rather than permit multiple antitrust litigations in different courts over virtually the same conduct and antitrust theories.

---

[1] The Supreme Court has established a two-part definition of "sham" litigation. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Second, the lawsuit must be brought subjectively in bad faith, "through the use of the governmental process -- as opposed to the outcome of that process -- as an anticompetitive weapon." *Id.* (quotation omitted).

[2] Endo's counterclaims are included at Exhibit B.

Transfer is also warranted as a response to a flood of antitrust cases filed against Purdue in the wake of Judge Stein's patent decision, most of which are already pending before Judge Stein himself. Roughly 27 nearly identical antitrust and unfair competition cases have been filed against Purdue in federal courts around the country since Judge Stein's decision. Each of these cases attacks Purdue's conduct in procuring and enforcing its patents for OxyContin®, and alleges that the patent lawsuit against Endo was a "sham." From among these roughly 27 cases, so far 17 have been filed in the S.D.N.Y., and all but two of those 15 have been assigned or referred to Judge Stein. The rest of the federal cases are sprinkled in various districts around the country, ranging from Massachusetts (this case) to Connecticut (three cases) to Illinois (two cases) to New Jersey (two cases) to Mississippi (one case).[3] No judge other than Judge Stein in the S.D.N.Y. is better situated to preside over the litigation of these multiple antitrust lawsuits challenging the same conduct and raising nearly identical legal theories.

In these circumstances, the interests of justice strongly favor transfer of this action to the S.D.N.Y.[4]

## FACTS

### A. The Purdue Patents and the Patent Action

Purdue holds a series of patents related to OxyContin®, including three patents at issue in the patent litigation against Endo (hereafter the "Purdue Patents"). OxyContin® is a controlled-release pain medication approved by the United States Food and Drug Administration (the

---

[3] In addition, a handful of cases have been filed in state court, and Purdue is seeking their removal to federal court and transfer to the S.D.N.Y. and Judge Stein.

[4] Furthermore, as discussed below, considerations of convenience to the parties and witnesses also strongly support transfer to the Judge Stein.

"FDA") for the management of moderate to severe pain that lasts for an extended period of time. The active ingredient in OxyContin is oxycodone, an opioid analgesic in use for decades.

In 2000, prior to the expiration of the Purdue Patents, Endo announced plans to introduce a generic controlled-release oxycodone pain medication. In response, in October 2000, Purdue filed a patent enforcement action (the "Patent Action") against Endo in the S.D.N.Y. Endo counterclaimed against Purdue, alleging that the Purdue Patents were invalid and unenforceable, and that Purdue's effort to enforce the patents violated the antitrust laws. Specifically, Endo claimed that the Patent Action was a sham, brought in bad faith and used as an anticompetitive weapon.

Both the patent and antitrust claims proceeded through nearly two years of fact and expert discovery. Curtis Aff. ¶¶ 3,5.[5] Judge Stein then stayed the antitrust claims pending trial on Purdue's patent infringement claims and Endo's patent-law defenses. *Id.* ¶ 5.

The patent claims and defenses were put to an 11-day bench trial in June 2003. On January 5, 2004, Judge Stein issued an Opinion and Order finding first that Endo's generic products infringed the Purdue Patents. 2004 WL 26523, at *5-19 (Exhibit A hereto). He went on, however, to find that the Purdue Patents were unenforceable because of inequitable conduct in the prosecution of the patents before the PTO, and he entered an injunction barring Purdue from enforcing those patents. *Id.* at *20-27.

Judge Stein's inequitable conduct ruling and related injunctive relief are now on appeal to the United States Court of Appeals for the Federal Circuit.

---

[5] References to the Curtis Aff. are to the affidavit of Jeanne C. Curtis, included as Exhibit C.

### B.   The Twenty-Seven Antitrust Cases

Endo's counterclaims against Purdue in the patent litigation include, among other theories, the same allegation of "sham litigation" that plaintiff advances in this case. As noted, those antitrust counterclaims have already proceeded through full fact discovery and expert reports have been exchanged.

Judge Stein's ruling in the patent litigation on inequitable conduct, however, opened the floodgates to further antitrust cases beyond Endo's counterclaims. In the days and weeks that followed, roughly 17 virtually identical antitrust suits were filed in the S.D.N.Y.[6] Additional federal court actions were filed in Connecticut, Massachusetts, New Jersey, Illinois, and Mississippi. Purdue is seeking to transfer all of these cases to the S.D.N.Y. (Various plaintiffs are also attempting to have these cases transferred to the S.D.N.Y. by the Panel for Multidistrict Litigation under 28 U.S.C. § 1407. Purdue has urged denial of the MDL motion, without prejudice, on the basis that Section 1404(a) transfers would be preferable to Section 1407 transfers, since the former transfers would be for all purposes while the latter would be only for the purposes of pretrial proceedings.) Still other actions arising out of the same facts were filed in various state courts; Purdue is also seeking to remove and transfer those state-court actions to the S.D.N.Y.

Each of the federal cases raises identical federal antitrust claims arising out of identical facts. Most of the cases allege nationwide putative classes. In each case, the plaintiff alleges that Purdue misrepresented facts to the PTO in prosecuting its patents, and that its enforcement of those patents against Endo was a "sham" and an act of monopolization in violation of the Sherman Act, 15 U.S.C. § 2.

---

[6]   Copies of all federal antitrust complaints filed to date are included in an Appendix accompanying this Memorandum of Law, Tabs 1 to 27.

### C. Facts and Witnesses Relevant to the Claims

Most of the known witnesses and documents relevant to this case and the other federal antitrust cases are proximate to and within the subpoena power of the S.D.N.Y. Curtis Aff. ¶ 7. The complaint in each of these cases alleges that Purdue violated the antitrust laws through the prosecution and enforcement of its patents. All or almost all of the complained-of conduct necessarily involves persons either at Purdue's headquarters in southern Connecticut, or at Purdue's research facilities in southern New York. Curtis Aff. ¶ 7.

### D. This Lawsuit

This putative class action raises virtually the identical antitrust theories asserted in Endo's counterclaim and in all of the subsequent lawsuits filed in the wake of Judge Stein's patent decision -- namely, that Purdue's patent suit against Endo was "sham litigation" and an act of monopolization in violation of the Sherman Act. Like those other actions, this case focuses exclusively on the prosecution and enforcement of the Purdue Patents. According to plaintiff, Purdue made "intentional misrepresentations to the United States Patent and Trademark Office and [committed] and committed sham litigation . . . to obtain and maintain an improper monopoly for OxyContin and oxycodone hydrochloride." (Compl. heading at 10.) In his Complaint, like all the other federal cases, plaintiff asserts a damages claim under § 16 of the Clayton Act based on alleged violations of § 2 of the Sherman Act. Count II asserts a claim for "restitution, disgorgement and constructive trust for unjust enrichment."

Just like the other 26 pending federal antitrust cases, the resolution of plaintiff's Complaint will turn on the application of the Supreme Court's legal test for whether litigation can be deemed a "sham." *See PRE*, 508 U.S. at 60-61. Also, like the other complaints, this one focuses almost exclusively on the conduct of Purdue and its employees, namely Purdue's development of OxyContin®, its prosecution of the related patents, and its decision to enforce

these patents. All of these matters are intertwined with the patent issues already decided by Judge Stein.

## ARGUMENT

This case should be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses" and "in the interest of justice."[7]

### I.   THE INTERESTS OF JUSTICE FAVOR TRANSFER TO NEW YORK.

Where the interests of justice clearly favor transfer, as they overwhelmingly do in this case, that factor alone warrants transfer. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968).

In the circumstances presented here, the interests of justice strongly favor transfer of this action to the Southern District of New York:

- This case is based on facts that transpired before the S.D.N.Y. It is about whether the Patent Action that was litigated there was a "sham." Judge Stein, who presided over the Patent Action, is already fully familiar with the complex issues of law and science involved in the case, along with the extensive factual record. Because a determination whether the litigation was a "sham" will turn entirely on the record of that litigation, Judge Stein is in the best position to decide this case.

- This case presents issues that are identical to the ones already being litigated as counterclaims to the Patent Action. The claims in this case are identical to the

---

[7]   The threshold consideration under § 1404(a) is whether the action might have been brought in the transferee forum. *Van Dusen v. Barrack*, 376 U.S. 612, 621-22 (1964). Here, the Southern District of New York clearly is a proper venue for this antitrust action alleging that prior patent litigation in that court was a "sham," since it is the "judicial district in which a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b).

counterclaims in the Patent Action that have been in litigation for almost two years. Substantial discovery has already occurred on these issues, overseen by Judge Stein.

- <u>This case is identical to other antitrust cases pending in the S.D.N.Y.</u> Because this case is essentially identical to roughly 17 cases already filed in the S.D.N.Y., transfer will eliminate wasteful and duplicative parallel proceedings.

- <u>Transfer will avoid duplicative litigation covering the same alleged classes of consumers.</u> The previously filed cases now pending in the S.D.N.Y. include class actions on behalf of nationwide classes of consumers. These classes are identical to the class alleged here. Without transfer, parallel class actions covering the same consumers would be proceeding in different courts.

### A. Judge Stein's Experience with the Patent Action Makes the Southern District of New York the Best Forum for Resolution of the "Sham Litigation" Claims.

This case will turn almost entirely on the record of the patent enforcement action in the Southern District of New York -- the alleged "sham litigation." Judge Stein of that court has already presided over that lawsuit, including an 11-day bench trial, and thus is fully familiar with the legal and factual matters from that prior record that will lie at the core of this antitrust action. Where one judge has become fully immersed in the record of a complex, voluminous case -- a record that must be understood in depth to resolve antitrust claims alleging that the prior litigation was a sham[8] -- it would be wasteful to impose upon multiple federal judges the task of mastering that same record.

Judge Stein's "familiarity with the legal problems, attorneys, witnesses, and exhibits relating to [the Purdue Patents] constitutes a precious asset, increasing in value with the passage of time, and which will undoubtedly lighten the burden of litigants and courts alike . . the husbanding of judicial effort and the importance of rendering expeditious service to litigants, support transfer rather than retention of the case." *Wyndham Assoc.*, 398 F.2d at 620. This is

---

[8] *See, e.g., Thermalloy Inc. v. Aavid Engineering, Inc.*, 935 F. Supp. 55, 63 (D.N.H. 1996), *aff'd*, 121 F.3d 691 (Fed. Cir. 1997) ("the court, once familiar with the underlying proceedings, may make a probable cause determination under the objective prong [of the *PRE* test] as a matter of law").

particularly true here, where Judge Stein has such a clear head start in determining whether, based on that complicated record, Purdue had an "objective basis" for filing suit -- the standard that must be met in adjudicating plaintiff's "sham litigation" claim. *See PRE*, 508 U.S. at 62 ("[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation").

Not only would it be a waste of judicial resources to require multiple judges to master the same voluminous record of the Patent Action, but because of the complexity of the issues here, the piecemeal litigation of these identical actions raises the specter of inconsistent adjudications on the identical legal and factual issues. Substantial difficulties would result if Judge Stein decided that there was a "chance" that the litigation before him could possibly have succeeded, but a judge in a different district reached a contrary decision based on the cold record of the Patent Action.

This is therefore precisely the type of case that the federal transfer rules were designed to address. That is, transfer of this case will "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted).

**B.    The Presence of an Almost Identical and Long-Litigated Antitrust Counterclaim, Plus Many Other "Sham Litigation" Claims Filed in that Court, Makes the Southern District of New York the Preferred Forum.**

As noted, this lawsuit is just one of roughly 27 pending federal antitrust cases involving the same issues of fact and law. More of these cases are already pending in S.D.N.Y. than in any other district, and one -- the Endo counterclaim -- has been litigated before Judge Stein for two

years.[9] Given the redundancy of this litigation with that already pending and ongoing in the S.D.N.Y., the interests of judicial efficiency clearly favor transfer.

The federal courts have repeatedly recognized that the very fact of pending identical actions in other jurisdictions weighs heavily in favor of transfer. In *Davox Corp. v. Digital Sys. Int'l, Inc.*, this Court transferred a patent enforcement action to the Western District of Washington because there were related patent claims pending in that district. 846 F. Supp. 144, 149 (D. Mass. 1993). According to this Court, "[s]ince these cases, concerning similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties." *Id.*

Similarly, in *Sea Hunt Corp. v. O.S. Debraak, LTD.*, this Court transferred the pending action so it could be tried together with an out-of-district action involving the same issues and evidence. 1986 WL 15476, *2-3 (D. Mass. Dec. 23, 1986). According to this Court, "[s]uch duplicitous litigation is a waste of time and resources. Pretrial discovery would have to be undertaken in both suits, parties and witnesses would waste time and money participating in proceedings in two districts, and judicial time and resources would be needlessly expended." *Id.* at 2; *accord Subaru of New England, Inc. v. Subaru of Augusta*, 121 F.R.D. 1, 3 (D. Mass. 1988) (court transferred case "to a district where litigation raising the same issues is pending when it is in the interests of justice to do so in order to avoid duplicitous litigation, even if the convenience of the parties and witnesses are in balance as between the two districts"); *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 238 (D. Conn. 2003) (transfer was appropriate because "substantial overlap in the issues raised in the two actions in question here would require the use

---

[9] Seventeen are pending in the S.D.N.Y., and no more than three are pending in any other district.

of judicial resources on largely duplicative proceedings" and transfer would "enabl[e] more efficient conduct of pretrial discovery, sav[e] witness time and money . . . and avoi[d] duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest").

*   *   *

In summary, transfer will serve the interests of justice in this case. As stated by Justice Black, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL*, 364 U.S. 19, 26 (1960). Transfer will further the goals of § 1404(a) and will ameliorate the harms that duplicative parallel litigation would inflict on both the parties and the judicial system itself.

## II.  THE CONVENIENCE OF PARTIES AND WITNESSES FAVORS TRANSFER TO NEW YORK.

The interests of justice, standing alone, support transfer of this case. This factor is not undercut by considerations of convenience. In *Sea Hunt Corp.*, this Court held that where there was a Massachusetts plaintiff and out of state defendants, it was equally convenient to litigate in Delaware as Massachusetts. 1986 WL 15476 at 2. Here, Purdue is based in the New York metropolitan area, and the S.D.N.Y. is even closer than the District of Delaware. As recognized by the precedents of this Court, therefore, it would not be inconvenient for this case to be litigated in the S.D.N.Y. *See also Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000) (no hardship in traveling the distance from Boston to New York to appear in a civil trial). Indeed, a transfer will maximize the convenience of Purdue and of many witnesses, as they will likely only then be required to appear in a single consolidated action in the S.D.N.Y.

*See Lincoln Nat. Life Ins. Co. v. AON Re, Inc.*, 2004 WL 115211, *1 (D. Conn. Jan 21, 2004) (convenience of parties maximized by transfer and consolidation with related out-of-district action).

### III. PLAINTIFF'S CHOICE OF FORUM IS NOT ENTITLED TO DEFERENCE IN THIS CASE.

A plaintiff's choice of forum should not be entitled to deference where, as here, there is a clear-cut showing that the concerns for the interests of justice override that choice. It has been long recognized that a plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens. *Schnieder v. H.A. Sears*, 265 F. Supp. 257, 266 (S.D.N.Y. 1967). Because of the compelling considerations of judicial efficiency that support transfer to the jurisdiction where related cases are already pending and where another judge has already mastered the critical legal and factual issues that lie at the heart of this antitrust case, no deference is due to plaintiff's choice of forum. Particularly in these circumstances, it would not make sense to defer to plaintiff's choice at the expense of judicial efficiency and the interests of justice.

Moreover, because this is a class action, "factors other than plaintiff's choice must necessarily take on increased significance." *Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 590 (S.D. Ohio 1986). "[I]n class actions less weight is given to the plaintiff's choice." *In re Nematron Corp. Securities Lit.*, 30 F. Supp. 2d 397, 406 (S.D.N.Y. 1998). This is particularly true here, where the class alleged here is identical to classes that have been alleged in almost identical cases brought in the S.D.N.Y. *See Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Because the

District of Massachusetts is not even plaintiff's "home forum," virtually no weight should be given to his choice here.

## CONCLUSION

For the foregoing reasons, the balance of private and public interests weighs heavily in favor of transfer to the United States District Court for the Southern District of New York. The Court thus should exercise its discretion to transfer this matter accordingly.

Respectfully submitted,
Purdue Pharma L.P., The Purdue
Pharma Company, The Purdue Frederick
Company, Purdue Pharmaceuticals L.P.,
and P.F. Laboratories, Inc.

_____
John T. Gutkoski (BBO #567182)
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110
Tel. No.: (617) 345-4600
Fax No.: (617) 345-4745
OF COUNSEL:

Timothy C. Hester
Christopher N. Sipes
COVINGTON & BURLING
1201 Pennsylvania Ave. NW
Washington, DC 20004-2401
Tel. No.: (202) 662-6000
Fax No.: (202) 778-5324

February 23, 2004

## CERTIFICATE OF SERVICE

I, John T. Gutkoski, hereby certify that I have on this 23rd day of February, 2004 served a copy of the within Memorandum in Support of Defendants' Assented-To Motion to Transfer Proceedings to the Southern District of New York on the Plaintiffs by causing a copy thereof to be delivered, in hand, to David Pastor, Esq. and Daniel D'Angelo, Esq. at Gilman and Pastor, LLP, Stonehill Corporate Center, 999 Broadway, Suite 500, Saugus, Massachusetts 01906.

_____
John T. Gutkoski

51263122v1